**Composite Exhibit A
Tab 2**

State Court Civil Cover Sheet
and Complaint
(D.E. 2 & 3)

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

####        I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>SIXTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>PASCO</u>   COUNTY, FLORIDA

<u>Erik Mishiyev</u>
Plaintiff

Case # _____
Judge _____

vs.

<u>SUNDAR PICHAI, YouTube LLC</u>
Defendant

---

####        II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

####        III.    TYPE OF CASE       (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

UNOFFICIAL DOCUMENT

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
    ☐ Business governance
    ☒ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**    **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.**    **NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

  4

**VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.**    **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Erik Mishiyev           Fla. Bar #
        Attorney or party               (Bar # if attorney)

Erik Mishiyev            10/17/2024
  (type or print name)          Date

IN THE CIRCUIT COURT FOR THE 6TH JUDICIAL CIRCUIT IN
AND FOR PASCO COUNTY, FLORIDA

ERIK MISHIYEV,

Plaintiff,                                          Case No.: _____

v.

YOUTUBE LLC and

SUNDAR PICHAI

Defendants.

_____.!

## INTRODUCTION

COMES NOW, the Plaintiff, ERIK MISHIYEV (the "Plaintiff" or "Mr. Mishiyev")

and and sues the  Defendants,  YOUTUBE  LLC ("YouTube") and SUNDAR PICHAI

("Mr. Pichai"),  the  Chief Executive Officer of Google, Inc. and Alphabet, Inc. jointly

and  severally,  for damages and other relief and as grounds, therefore, aver as follows:

Defendants are responsible for the conduct described herein and are the proper

Defendants in this action. If discovery demonstrates that there are other entities or

individuals that are also responsible and/or liable for the conduct challenged in this

litigation, Plaintiffs will amend their complaint and name those additional entities as

defendants in this action.

## COMPLAINT AND JURY TRIAL DEMANDED

COMES NOW, the Plaintiff, ERIK MISHIYEV (the "Plaintiff" or "Mr. Mishiyev") and

says as follows:

## PARTIES

1. Plaintiff, **ERIK MISHIYEV** (the "Plaintiff" or **"Mr.** Mishiyev") is an individual and

   is a resident of the State of Florida, in Pasco County

2. Defendant, **YOUTUBE, LLC** ("YouTube") is a foreign limited liability company

   with its principal place of business located at 901 Cherry Avenue, San Bruno,

California, and conducts business in the State of Florida, throughout the United States, and internationally.

3.  Defendant, **SUNDAR PICHAI** ("Mr. Pichai") is the Chief Executive Officer of Google, Inc. and Alphabet, Inc. and is responsible for the acts alleged herein of YouTube.

4.  Collectively all Defendants will be referred to as the "Defendants".

<u>**SUBJECT MATTER JURISDICTION AND VENUE**</u>

5.  This is an action against the Defendants based upon Interference with Business Relations and Florida's Unfair and Deceptive Trade Practices Act, seeking damages and other relief in excess of **One Million Five Hundred Thousand Dollars ($1,500,000.00),** exclusive of interest and costs.

6.  All transactions between the Plaintiffs and Defendants occurred in Pasco County, and Hillsborough County, Florida.

<u>**LEGAL ARGUMENTS**</u>

7.  On May 9, 2024, The U.S. Supreme Court issued a decision in the case of Warner Chappell Music, Inc. v. Nealy, et al., No. 22-1078 and it goes directly to the arguments in this matter.

8.  There is a three-year statute of limitations for filing a lawsuit under the DMCA, however there is also the discovery rule, which allows a claim to start to accrue from the time that a Plaintiff discovers it with due diligence.

9.  The new U.S. Supreme Court case also sets forth that there is no limit of the time limit on monetary damages. In other words, there is not a three-year cap on damages.

10. In this matter, the Plaintiff is entitled to damages for acts that occurred more than three years before the filing of this lawsuit, and for current and future damages totaling well over $1,000,000 (million) dollars. Many YouTuber's make 1 million dollars a year and rely on their channels as their main source of

income and as a full time livelihood.

11. Under the discovery rule, the Defendants admit that a claim occurs when the Plaintiff learns or it, pursuant to Nealy v. Warner Chappell Music, Inc., 60 F. 4th 1325, 1329 (11th Cir. 2023) and in this matter, the Plaintiff within the last few years discovered the misconduct of the Defendants is actionable.

12. From 2018 to 2024 the Defendants have allowed their major record label associates (who also use the YouTube Platform) to continue to send false DMCA takedown notices, knowing that no court action was taken against Plaintiff at all. The Plaintiff has recently within the last few years discovered what has occurred to him and that he has cause of action(s).

**<u>STATEMENT OF FACTS</u>**

13. Defendants and their associates (who are Plaintiff's competitors in the TV and Music industry) have interfered with Plaintiffs YouTube channels dating back from 2014 to today's date in 2024 which continues to cause Plaintiff extreme, severe harm, both emotionally and financially. Plaintiff was forced to file Chapter 7 in May of 2021.

14. The Plaintiff was one of the most highly successful DJ's in **Florida market** and operated a YouTube channel that as of January 2019 had over 250,00 subscribers and 110 million views. Plaintiff was known as "DJ Short-E" and was Tampa's only independent DJ with a YouTube award. **(see Exhibit A)**

15. Plaintiff alleges Defendants and their associates, specifically the major labels and the artists or DJs signed to those labels, have colluded with Defendants to eliminate Plaintiff AKA DJ Short-e from competing against them.

16. YouTube is a video-sharing site where close to a billion internet users post videos. Plaintiff is an independent self-employed DJ who spent 10 years working very hard building up his YouTube channel. Users can monetize their channels, while making a good living from Google's AdSense program which places advertisements on users' videos and channels. The

more views your videos receive, the more money they can make.

Case 3:24-cv-08661-CRB    Document 1-3    Filed 11/18/24    Page 8 of 30

17. YouTube channels operate much like television channels, with each individual channel, being able to develop its own content, interact with users and seek out and gain subscribers, who are then notified each time that channel creates new videos.

18. The Plaintiff was one of the early users of YouTube, having created several YouTube channels, as early as 2007. As a matter of fact, Defendants reached out to Plaintiff personally and offered him a show deal in 2007 and in 2008 Plaintiff began to earn AD revenue from YouTube's AdSense program. That is offered to channels who meet the criteria to access monetization.

19. In 2007, YouTube was still a very new platform. It has since that time become extremely popular and **by far the biggest** and most popular platform of its kind in 2024.

20. The number of subscribers that a YouTube channel has is a highly sought-after goal and in June of 2017 the Plaintiff received a congratulatory letter from the then CEO of YouTube, commemorating his channel reaching 100,000 subscribers and stating, "No one can take this away from you".

21. Tens of thousands of YouTubers posted and continue to post the same type of content the Plaintiff did and it was only after the content that was posted appeared to be getting very popular which generates good money, or of a politically conservative nature and about former President Donald Trump, that the Plaintiff was then censored, shadow-banned and bombarded with copyright fraudulent takedown/copyright infringement complaints. As a result, views to his page were diverted, his subscribers were not being notified when Plaintiff uploaded new videos, his Ad revenue was stopped and his channel was ultimately terminated. For no reason, on or about **December 14, 2018**, YouTube notified Plaintiff that they were permanently cancelling his YouTube

channels because of his litigation threat with respect to the TECHNICAL glitches and unlawful anti-competitive tactics that were and are still being used against the Plaintiff in 2024, brought on by other DJs who are envious and jealous of him.

22. At the time that the Plaintiff's YouTube channel was cancelled, he had accumulated over 110 million views and earned over **$310,000** from YouTube. Due to the actions of the Defendants, the Plaintiff lost his only platform, his ability to communicate with his fan base, his AD revenue income, his reputation was destroyed, his credit score was ruined, and he was forced to file bankruptcy. Adding insult to injury, YouTube now allows other YouTubers to go by the name "DJ Short-E", even though the Plaintiff had a federal trademark for the name "DJ Short-E", with U.S. Serial Number: 85930668, U.S. Registration Number: 4493986, U.S. Registration Date: Mar 11, 2014, Mark: DJ SHORT-E, Owner: Mishiyev, Erik--

23. The Plaintiff has never been sued for copyright and never lost a copyright dispute. **YouTube did not follow their own terms and conditions and copyright policies** in 2024 and is not cooperating with the FAIR USE copyright laws as they seem to be playing both Judge and Jury without first taking into account what the laws state. By doing this, Plaintiff has been left injured and forced to file this lawsuit.

24. It is known that people put frivolous copyright claims on popular videos to try and steal ad earnings and to stifle competition and to stop any momentum the video has by taking it down which causes a Youtuber to get a strike on their channel. After three strikes the channel gets taken down. YouTube allows users to file a dispute and if no court action is taken the videos must go back online and the strike should then be removed. Plaintiff argues that any copyright issues that arose were covered by the Fair Use doctrine and has

25. Plaintiff noticed illegal activity by YouTube when his subscribers contacted him to tell him what was happening to them when they tried to search for his *videos and channels*. This confirmed that YouTube has the ability to show favoritism and bias against you, which also means the Defendants have assisted the claimants who put in these fraudulent copyright claims and also assisted the Plaintiff's enemies who have been trying to destroy the Plaintiff's career and livelihood because he was on his way to becoming a big star in the music industry.

26. After years of trying to get problems with his channels fixed, Plaintiff threatened YouTube with a lawsuit after a google chat reps were hiding some crucial information from him such as proof of if they were actually sending his new video uploads to his subscribers who wanted to be notified.  YouTube seemed to be hiding something when they said on **9/2024**, "We can't share this information with you." After Plaintiff asked for some transparency.

27. Other social media companies, Constant Contact, GoDaddy Email marketing, MailChimp and countless other companies show full transparency on distribution on the back end, but YouTube does not, which should make this court understand that Defendants are hiding crucial information unfairly.

28. Of particular concern to the Plaintiff is that Defendants are showing favoritism and colluding with the Major Record labels. For example, the actions of Frank Schellenberger ("Mr.Schellenberger"), who was at all times relevant the Senior Director of Digital Rights Administration at BMG - The New Music Company.

29. According to his LinkedIn profile, **Mr.** Schellengerger has over 10 years in the field of International Copyright regulations.

30. Even though he does not live in the United States and has no jurisdiction, YouTube/Defendants allows people like Mr. Schellenberger to flag videos of the Plaintiff and essentially hijacking the videos and holding them hostage, without first filing a lawsuit or following through on explaining how the videos violated the copyright laws and without sending a copy of the Plaintiff's response/counter-notice to him, which prevented the dispute from being fully processed, per YouTube's own policies.

31. Based on information and belief, **Mr.** Schellenberger is located in Berlin Germany and flagged multiple videos of YouTube creators, whom large companies and the DJs signed to their labels viewed Plaintiff as a potential threat who was independent and not signed to their labels

32. BMG presents itself as a company that protects the rights of musicians, however in his role with BMG, Mr. Schellenberger harassed the Plaintiff and flagged his YouTube videos that did not actually violate any copyright laws. Defendants have allowed their associates to hijack and hostage Plaintiff's videos without giving Plaintiff the opportunity to dispute or appeal any claims against the videos that were taken down which caused 3 strikes to his YouTube channel which caused a major extreme severe hardship to the Plaintiff, emotionally and financially.

33. The Digital Millennium Copyright Act (DMCA), 17 U.S.C.S. § 512(f), imposes liability for misrepresenting that copyright infringement occurred. To state a claim under§ 512(f), a plaintiff must allege facts to show that (1) the defendant knowingly and materially misrepresented that copyright infringement occurred; (2) a service provider relied on that misrepresentation; and (3) the plaintiff was injured as a result.

34. YouTube has no such procedures, so a YouTube creator such as the Plaintiff could be and was falsely accused of copyright violations and was left with no recourse.

35. Yet, the Plaintiff had received an award from the CEO of YouTube, due to **him** being one of its best creators.

36. In censoring (flagging, demonetizing, etc.) Plaintiff, Defendants relied upon and acted pursuant to Section 230 of the Communications Decency Act.

37. This is NOT a Section 230 case; it is a copyright infringement case that is accusing Defendants of unlawfully ignoring the Fair Use Copyright Laws and for gross negligence when it comes to following their own terms and conditions, specifically on how the dispute, appeals and counter notifications how those documents should be handled and processed by law.

38. Defendants would not have de-platformed Plaintiff or similarly situated Putative Class Members but for the immunity purportedly offered by Section 230.

39. . Section 230(c)(2) purports to immunize social media companies from liability for action taken by them to block, restrict, or refuse to carry "objectionable" speech even if that speech is "constitutionally protected." 47 U.S.C. § 230(c)(2).

40. In addition, Section 230(c)(l) also has been interpreted as furnishing an additional immunity to social media companies for action taken by them to block, restrict, or refuse to carry constitutionally protected speech.

41. Section 230(c)(l) and 230(c)(2) were deliberately enacted by Congress to induce, encourage, and promote social medial companies to accomplish an objective-the censorship of supposedly "objectionable" but constitutionally protected speech on the Internet-that Congress could not constitutionally accomplish itself.

42. Congress cannot lawfully induce, encourage, or promote private persons to

accomplish what it is constitutionally forbidden to accomplish." *Norwood* v.

*Harrison,* 413 US 455, 465 (1973).

43. Section 230(c)(2) is therefore unconstitutional on its face, and Section 230(c)(I) is likewise unconstitutional insofar as it has been interpreted to immunize social media companies for action they take to censor constitutionally protected speech.

44. Section 230(c)(2) on its face, as well as Section 230(c)(I) when interpreted as described above, are also subject to heightened First Amendment scrutiny as content- and viewpoint-based regulations authorizing and encouraging large social media companies to censor constitutionally protected speech on the basis of its supposedly objectionable content and viewpoint. *See Denver Area Educational Telecommunications Consortium, Inc.* v. FCC, 518 U.S. 727 (1996).

45. Such heightened scrutiny cannot be satisfied here because Section 230 is not narrowly tailored, but rather a blank check issued to private companies holding unprecedented power over the content of public discourse to censor constitutionally protected speech with impunity, resulting in a grave threat to the freedom of expression and to democracy itself; because the word "objectionable" in Section 230 is so ill-defined, vague and capacious that it results in systematic viewpoint-based censorship of political speech, rather than merely the protection of children from obscene or sexually explicit speech as was its original intent; because Section 230 purports to immunize social media companies for censoring speech on the basis of viewpoint, not merely content; because Section 230 has turned a handful of private behemoth companies into "ministries of truth" and into the arbiters of what information and viewpoints can and cannot be uttered or heard by hundreds of millions of Americans; and because the legitimate

interests behind Section 230 could have been served through far less speech-restrictive measures.

46. **In the state of Florida, Senate Bill 7072,** Social Media Platforms (the "Social Media Bill") was signed into law with an effective date of July 1, 2021 and it prohibits social media companies such as YouTube from terminating accounts, based on political beliefs and/or statements.

47. The Social Media Bill has had an injunction entered due to federal litigation, but the issue of if a company can remove content, based on their objections to the political content or the political beliefs contained therein, is ripe for review by a court.

48. Attached as exhibits are documents showing communications from YouTube to the Plaintiff, including copyright disputes and other documents showing the arbitrary manner in which YouTube proceeded to terminate the Plaintiff's account.

**COUNT I - ALL DEFENDANTS**

**<u>(INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS)</u>**

49. Plaintiff asserts and re-alleges the allegations set forth above, as if fully set forth herein.

50. As a result of the operation of his business, Plaintiff has a business relationship with the Defendants as an independent contractor who relied on monthly ad revenue from Defendants.

51. The actions of Defendants as previously described constitute a knowing intentional and unjustified interference with his business relationships and they should have known it would cause the Plaintiff harm.

52. Plaintiff has contacted YouTube countless times, putting in complaints about the allegations mentioned in this complaint but Defendants did nothing about it and stonewalled Plaintiff and continue to avoid any accountability.

53. As a proximate cause and result of the unlawful actions of Defendants, Plaintiff has suffered damages, including loss of income, loss of profits, and loss of business goodwill and business relationships.

54. The Plaintiff will employ counsel to represent him in this litigation and has agreed to pay counsel a reasonable fee for any and all such services.

55. Plaintiff is entitled to attorney's fees and damages from Defendants.

**WHEREFORE,** Plaintiff, Mr. Mishiyev demands judgment against the Defendants for compensatory damages and an award of reasonable attorneys' fees and costs and further relief as the Court may deem just and proper.

### COUNT II - ALL DEFENDANTS

### <u>(VIOLATIONS OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, CHAPTER 501. PART II. FLORIDA STATUTES)</u>

56. Plaintiff asserts and re-alleges the allegations set forth above, as if fully set forth herein.

57. Pursuant to § 501.204 (1), Florida Statutes, "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful"

58. As set forth in the above paragraphs, Defendants have engaged **in** a pattern of misinformation, deception and unconscionable acts and practices, and unfair and deceptive acts and practices **in** the conduct of trade and commerce with regards to the lease agreement and the failure to make repairs to the Property.

59. Pursuant to § 501.211 (1), Florida Statutes, "Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."

60. Furthermore, pursuant to § 501.211 (2), Florida Statutes, "In any action brought by a person who has suffered a loss as a result of a violation of this

part, such person may recover actual damages, plus attorney's fees and court costs as provided <u>ins. 501.2105."</u>

61. Defendants have willfully engaged **in** the acts and practices as outlined **in** the above paragraphs, when they knew or should have known that such acts and practices were unfair and deceptive or otherwise prohibited by law.

62. These above-described acts and practices of the Defendants have injured and will likely continue to injure and prejudice the Plaintiff.

63. Unless the Defendants are temporarily and permanently enjoined from engaging further **in** the acts and practices complained of herein, the Defendant's actions will result **in** irreparable injury to the Plaintiff for which there is no adequate remedy at law.

64. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs have incurred damages substantially **in** excess of **$1,500.000 (1.5 Million),** which include, *inter alia,* direct and consequential damages, extra expenses, loss of profits, attorney fees and damages.

**WHEREFORE,** Plaintiff, Mr. Mishiyev demands judgment against the Defendants for compensatory damages and an award of reasonable attorneys' fees and costs and further relief as the Court may deem just and proper.

## COUNT III - ALL DEFENDANTS

### (MISREPRESENTATION UNDER 17 U.S.C. § 512(F))

65. Plaintiff asserts and re-alleges the allegations set forth above, as if fully set forth herein.

66. Specifically, a procedure that states Defendants associates, who took down these videos must show YouTube that they have taken court action against Mr. Mishiyev within 10-14 days of taking down his videos. They did no such thing and broken the laws and Defendants know this and have stonewalled Plaintiff for several years. Mr. Mishiyev sent counter-notifications for the videos in question and emailed to the Defendants and their associates numerous times, but they do not assist Plaintiff in

67. The takedown notices in this matter were presented by the Defendants as being based on materials on the Plaintiff's YouTube channel that infringed upon copyright owned by the Defendants and/or for artists that were represented by the Defendants.

68. The takedown notices contained misrepresentations that material or activity was infringing.

69. According to information and belief, Defendants knew at the time they sent the takedown notices that the representations in the takedown notices that material or activity was infringing were false.

70. The misrepresentations contained in the takedown notices were material to YouTube's decision to remove or disable Plaintiff's channel and they have no proof any of their associates have taken court action against him to keep the content off their Platform, which is what Defendants policies on their website stats should occur when there is a counter notification involved.

71. On **10/24/2022** YouTube notified Plaintiff's 2nd biggest channel was terminated, see channel link: https://www.youtube.com/channel/UCJpLM4bE48AzbmygBUcGVwQ

72. As a matter of fact, these strikes should have expired after 90 days according to Defendants website as of **10/17/2024** see website link below:

https://support.google.com/youtube/answer/2807684?hl=en

73. Defendants website also states the following: "If your content was removed due to a copyright removal request and you believe it's because of a mistake or misidentification, you can submit a counter notification. This is a **legal request for YouTube to reinstate content** that was removed due to a copyright removal request.

74. "Only submit a counter notification if your content was removed due to a **mistake or misidentification**. This includes exceptions to copyright, such as

cases of fair use or fair dealing.

75. "If your content doesn't fit the criteria above, you can **wait 90 days** for the copyright strike to expire. You can also try to **get in touch with the claimant** directly to request a retraction."

76. Plaintiff has tried numerous times from <u>**01/2019 to 10/17/2024**</u> to resolve these issues but he is met with stonewalling and no clear explanation on why this is happening to him, as he:

a) The Plaintiff has submitted VALID counter notifications from 2019-2024 that are filled out properly and that he used to win similar disputes within the past. But for some odd reason, for the last 5 years, YouTube is **failing to forward those notices** and stating his videos are not eligible, which makes no sense to Plaintiff.  The Plaintiff cannot access his YouTube account to do it online, which is automated process, so he must email YouTube's copyright team manually to do it but they are failing to do so without following the Fair Use doctrine.

b) Mr. Mishiyev has submitted numerous counter notification notices to YouTube copyright team from 01/2019 to 10/17/2024 but they do not give a clear explanation on why Plaintiff's notices are being "rejected" instead the should be forwarding his counter notices to associates which is required by law and as it states on their website.

c) It has been well over 90 days and according to Defendants website, these videos which have strikes placed on them by their associates, should have expired by now, and the content should have been restored by YouTube by now, according to their own policy.

d) Plaintiff has tried to request for a retraction but the email address's the Defendants provided are outdated and do not work so he sent them to YouTube associates counsel and cc' the Defendants email address:

respond and continue to stonewall Plaintiff's requests to resolve this issue.

77. Plaintiff has several new and old channels that are being affected from 2008-2024. Plaintiff sent counter notice AGAIN on <u>10/17/2024</u> even though there is plenty of evidence Plaintiff has sent claimants and these Defendants many emails/notices over the years.

78. There is <u>no statute of limitations</u> that prevent Plaintiff from sending a copyright counter notice to Defendants and their associates who are putting fraudulent copyright takedowns on Plaintiff's videos. A counter notice can be sent at any time as many times as necessary for any videos, old or new, in order to try and resolve a copyright dispute, especially when dealing with videos that appear to be protected by FAIR USE.

79. According to the recent Supreme Court, Plaintiff is also able to recover for damages that occurred after the statue of limitations as there is no cap on damages awarded for fraudulent takedowns. **See Warner Chappel Music, Inc., v. Nealy, 144 S. Ct. 1135 (2024);**

80. It is alleged that the Defendants have engaged in violations of 17 U.S.C. of 42 U.S.C. §512, which is the Digital Millennium Copyright Act (the "DMCA").

81. Plaintiff suffered damages as a result of YouTube's relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing.

82. In another copyright case, Universal Music Group who is associated with Defendants and dso a tremendous amount of business with them, argued that due to the fact-intensive analysis of "fair use," such analysis was not required. However, the Ninth Circuit stated that, because the **"fair use" doctrine is codified in the U.S. Copyright Act, "[f]air use is not just excused by the law, it is wholly authorized by the law."** It found that claimants or service providers like Universal could not shirk

their responsibilities to at least consider whether a potential infringement was, in fact, authorized under U.S. Copyright Law.

83. As a direct and proximate result of Defendant's misrepresentation, Plaintiff has incurred damages substantially in excess of **One Million Five Hundred Thousand Dollars (1.5 Million)**, which include, *inter alia,* direct and consequential damages, extra expenses, loss of profits, attorney fees and damages.

**WHEREFORE**, Plaintiff, Mr. Mishiyev demands judgment against the Defendants for compensatory damages and for costs and attorneys' fees pursuant to 17 U.S.C. § 512(f), an award of reasonable attorneys' fees and costs and further relief as the Court may deem just and proper.

## COUNT IV – ALL DEFENDANTS

## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

84. Plaintiff asserts and re-allege the allegations set forth above, as if fully set forth herein.

85. The acts of Defendants in connection with their associates described herein constitutes outrageous conduct against Mr. Mishiyev. These acts terrorized Mr. Mishiyev and were intended to cause Plaintiffs to suffer emotional distress, or, in the alternative, Defendants engaged in the conduct with reckless disregard of the high probability of causing Mr. Mishiyev to suffer emotional distress.

86. Mr. Mishiyev is continuing to suffer severe emotional distress every day, mainly because his reputation was destroyed when his YouTube channels went down and he no longer has an audience or new source of income, which also caused him great financial emotional distress and long-term harm when his Bankruptcy was closed on 6/19/2023. Defendants are the cause of various emotional distress.

87. Plaintiff is the only DJ in Tampa with a YouTube award and worked hard for 10 long years to build his brand, but that has been destroyed by Defendants beyond repair, costing Plaintiff <u>millions in lost gross revenue</u>, not only from the last 3 years, but daily

and future lost earnings as well. Defendants and their associates who are competing against Plaintiff are unlawfully ignoring the FAIR USE doctrine and all of Plaintiff's attempts to resolve this issue with his videos, as Defendants continue to harass and hold various videos, purposely to harm Mr. Mishiyev from competing against them.

88. Plaintiff is the only DJ that is being targeted by Defendants and a Discovery process will reveal the real reasons. The outrageous conduct of Defendants as set forth above, constitutes intentional infliction of emotional distress and is actionable under the laws of the State of Florida.

**WHEREFORE,** Plaintiff, Mr. Mishiyev respectfully demands an injunction and judgment against the Defendants for compensatory damages and for costs and attorneys' fees, loss of past income, present income and future income, due to the actions of the Defendants **and** their associates.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands injunctive relief, discovery to proceed and a trial by jury on all issues within this Complaint.

RESPECTFULLY SUBMITTED UNDER OATH,
on this **17th** day of October 2024.

By: _Erik Mishiyev_

Plaintiff, ERIK MISHIYEV

**EXHIBIT "A"**



**Plaintiff received a YouTube award in 6/2017 after 10 years of hard work building his channels.**





You've just done something very few YouTube creators accomplish: You had an astonishing 100,000 people subscribe to your channel.

We know numbers on YouTube can get really big, but we hope you don't lose sight of the reality behind that six-digit milestone. Each and every person who has subscribed to your channel was touched by what you did. They were inspired, or challenged, or entertained.

You made it to this milestone with hard work, perseverance, and – chances are – a healthy sense of humor. What you've accomplished can't be taken away from you. And we'd like to recognize you and all your hard work with this silver play button, a small token of our esteem and respect.

We know you don't do this for rewards. You do it because you have a drive to create and share, and because you've found an audience who cares. Believe us when we say that we can't wait to see what you do next. A million subscribers may seem a long way off right now, but you're closer than you think. And we're rooting for you.

Congratulations.

Sincerely,

Susan Wojcicki
CEO, YouTube

175

**PLAINTIFF RECEIVED A LETTER FROM YOUTUBE CEO**

 **Gmail**                                                    **DJ Short-e <djshortehot4eva@gmail.com>**

## Copyright Counter Notification

**DJ Short-e** <djshortehot4eva@gmail.com>                              Thu, Oct 17, 2024 at 5:12 PM
To: Copyright Service <copyright@youtube.com>
Cc: "Rock, Loreal R." <LRock@jenner.com>, creator-support@google.com, creator-support@youtube.com,
legal@google.com, legal@support.youtube.com

Legal Counter Notification, please forward to claimants, I have cc' their attorney in a lawsuit i have against them, I am protected by FAIR USE and I own these videos and they have not sued me or taken me to court, it has been over 90 days and the strikes should have expired and I have been trying to submit counter notices but YouTube and your associates (major record labels) are not cooperating with the process and this is UNLAWFUL.

1. Your contact information

- **Plaintiff Full legal name**: Erik Mishiyev

- **Email address:** erikinc@icloud.com

- **Physical address:** 6697 Emmy Lane Apt 309 Wesley Chapel, FL 33544

- **Telephone number:** 917-727-4685

2. Formatted links to the content

Counter notifications must include links to the content that was removed due to a copyright removal request. **Links must be sent in a specific format** (see below). General information such as channel name or channel URL is not acceptable.

- http://www.youtube.com/watch?v=onIRQn0zCW8
- http://www.youtube.com/watch?v=1nBmVV6U6DY
- http://www.youtube.com/watch?v=ngLzAoSfdP4
- http://www.youtube.com/watch?v=K5y-8-bU8p8
- http://www.youtube.com/watch?v=dSKxm6Bk8FI
- http://www.youtube.com/watch?v=9Lb01gKxTzQ
- http://www.youtube.com/watch?v=kDJZZCXQPR0
- http://www.youtube.com/watch?v=z5bxmI59DV4

3. Legal statements

Agree to and include the following required legal statements

- *"I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant."*

- *"I swear, under penalty of perjury, that I have a good faith belief that the material was removed or disabled as a result of a mistake or misidentification of the material to be removed or disabled."*

4. Statement to the claimant

In your own words, you must include a statement to the claimant that clearly and concisely explains **why you believe the removal of the content at issue was a mistake or misidentification**. Misidentification includes cases of exceptions to copyright, such as fair use or fair dealing.

"I believe the removal of the content at issue was a mistake or misidentification because my video(s) are FAIR USE and or FAIR DEALING as they are transformative works used for promotional campaigns to market my DJ brand and to display my talents. I am protected by the DMCA fraudulent copyright claim laws, I am prepared to defend myself in a court of law if claimants decide to take court action against me."

5. Your signature

Complete and valid counter notifications require the **physical or electronic signature** of the uploader or representative authorized to act on their behalf.

Truthfully under oath,

_____
Erik Mishiyev/Plaintiff

# DMCA Counter-Notice Process

After a takedown notice is sent to a service provider, the provider usually notifies the user, subscriber or other person who is responsible for engaging in the infringing activity. If that person – the alleged infringer – in good faith does not think the activity is infringing, he or she can send a Digital Millennium Copyright Act (DMCA) counter notice to the service provider explaining why they disagree with the copyright owner. Like the takedown notice, there are certain elements that must be contained in a DMCA counter notice. Providing false information in a counter notice is punishable under federal law, and those making false notices can be sued and held civilly liable.

After receiving a counter notice, the service provider is obligated to forward that counter notice to the person who sent the original takedown notice. Once the service provider has received a valid DMCA counter notice they must wait 10-14 days. If the copyright owner sues the alleged infringer in that time frame the material will remain down, but if no suit is filed then the service provider must re-activate or allow access to the alleged infringing activity.

**Erik Mishiyev/Plaintiff**
Hot Forever Inc.
President & CEO
917-727-4684

 Gmail

**DJ Short-e <djshortehot4eva@gmail.com>**

---

## Re: [4FNFRBAY45ZZQQZNZJB3KNCECE] New Copyright Counter-Notification

YouTube Copyright <youtube-disputes+3t7ng4u6bqn8i0q@google.com>                     Thu, Oct 17, 2024 at 5:14 PM
Reply-To: YouTube Copyright <youtube-disputes+3t7ng4u6bqn8i0q@google.com>
To: djshortehot4eva@gmail.com

 YouTube

Hi,

Thank you for your counter notification.

Our system detected that the following videos you submitted are not eligible for a counter notification.

Video was already reviewed and rejected as part of a previous counter notification:

- http://www.youtube.com/watch?v=1nBmVV6U6DY
- http://www.youtube.com/watch?v=onlRQn0zCW8
- http://www.youtube.com/watch?v=dSKxm6Bk8Fl
- http://www.youtube.com/watch?v=ngLzAoSfdP4
- http://www.youtube.com/watch?v=K5y-8-bU8p8
- http://www.youtube.com/watch?v=kDJZZCXQPR0
- http://www.youtube.com/watch?v=z5bxml59DV4
- http://www.youtube.com/watch?v=9Lb01gKxTzQ

- The YouTube Team

Help Center • Email Options

You received this email to provide information and updates around your YouTube channel or account.

 YouTube

© 2021 Google LLC d/b/a YouTube, 901 Cherry Ave, San Bruno, CA 94066

---

On Oct 17, 2024 djshortehot4eva@gmail.com wrote:

Legal Counter Notification, please forward to claimants, I have cc' their attorney in a lawsuit i have against them, I am protected by FAIR USE and I own these videos and they have not sued me or taken me to court, it has been over 90 days and the strikes should have expired and I have been trying to submit counter notices but YouTube and your associates (major record labels) are not cooperating with the process and this is UNLAWFUL.

1. Your contact information

· **Plaintiff Full legal name**: Erik Mishiyev

· **Email address:** erikinc@icloud.com

· **Physical address:** 6697 Emmy Lane Apt 309 Wesley Chapel, FL 33544

· **Telephone number:** 917-727-4685

## 2. Formatted links to the content

Counter notifications must include links to the content that was removed due to a copyright removal request. **Links must be sent in a specific format** (see below). General information such as channel name or channel URL is not acceptable.

· http://www.youtube.com/watch?v=onlRQn0zCW8

· http://www.youtube.com/watch?v=1nBmVV6U6DY

· http://www.youtube.com/watch?v=ngLzAoSfdP4

· http://www.youtube.com/watch?v=K5y-8-bU8p8

· http://www.youtube.com/watch?v=dSKxm6Bk8FI

· http://www.youtube.com/watch?v=9Lb01gKxTzQ

· http://www.youtube.com/watch?v=kDJZZCXQPR0

· http://www.youtube.com/watch?v=z5bxmI59DV4

## 3. Legal statements

Agree to and include the following required legal statements

· *"I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant."*

· *"I swear, under penalty of perjury, that I have a good faith belief that the material was removed or disabled as a result of a mistake or misidentification of the material to be removed or disabled."*

## 4. Statement to the claimant

In your own words, you must include a statement to the claimant that clearly and concisely explains **why you believe the removal of the content at issue was a mistake or misidentification**. Misidentification includes cases of exceptions to copyright, such as fair use or fair dealing.

"I believe the removal of the content at issue was a mistake or misidentification because my video(s) are FAIR USE and or FAIR DEALING as they are transformative works used for promotional campaigns to market my DJ brand and to display my talents. I am protected by the DMCA fraudulent copyright claim laws, I am prepared to defend myself in a court of law if claimants decide to take court action against me."

5. Your signature

Complete and valid counter notifications require the **physical or electronic signature** of the uploader or representative *authorized to act on their behalf.*

Truthfully under oath,

*Erik Mishiyev*
Erik Mishiyev/Plaintiff

# DMCA Counter-Notice Process

After a takedown notice is sent to a service provider, the provider usually notifies the user, subscriber or other person who is responsible for engaging in the infringing activity. If that person – the alleged infringer – in good faith does not think the activity is infringing, he or she can send a Digital Millennium Copyright Act (DMCA) counter notice to the service provider explaining why they disagree with the copyright owner. Like the takedown notice, there are certain elements that must be contained in a DMCA counter notice. Providing false information in a counter notice is punishable under federal law, and those making false notices can be sued and held civilly liable.

After receiving a counter notice, the service provider is obligated to forward that counter notice to the person who sent the original takedown notice. Once the service provider has received a valid DMCA counter notice they must wait 10-14 days. If the copyright owner sues the alleged infringer in that time frame the material will remain down, but if no suit is filed then the service provider must re-activate or allow access to the alleged infringing activity.

**Erik Mishiyev/Plaintiff**
Hot Forever Inc.
President & CEO
917-727-4684