BRYAN CAVE LEIGHTON PAISNER LLP
Rachel Matteo-Boehm (California State Bar No. 195492)
rachel.matteo-boehm@bclplaw.com
3 Embarcadero Center, 7th Floor
San Francisco, CA 94105
Telephone: (415) 675-3400
Facsimile: (415) 675-3434

Damon J. Whitaker (admitted *pro hac vice*)
damon.whitaker@bclplaw.com
1201 W. Peachtree Street NW, 14th Floor
Atlanta, GA 30309
Telephone: (404) 572-6600
Facsimile: (404) 572-6999

Attorneys for Defendants
YOUTUBE, LLC and SUNDAR PICHAI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| ERIK MISHIYEV,<br><br>          Plaintiff,<br><br>     vs.<br><br>YOUTUBE, LLC and SUNDAR PICHAI,<br>          Defendants. | Case No. 24-cv-08661-WHA<br><br>Hon. William H. Alsup<br><br>**DEFENDANTS YOUTUBE, LLC AND SUNDAR PICHAI'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT WITH PREJUDICE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[FRCP 12(b)(6)]<br><br>Action Filed:  October 17, 2024<br>Transferred to N.D. Cal.:  December 3, 2024<br>Assigned to this Court:  January 10, 2025<br>Hearing Date:  April 10, 2025<br>Hearing Time:  8:00 am<br>Trial Date:  Not yet scheduled<br><br>Documents Filed Herewith:<br>(1) Request for Judicial Notice (Exhibits A-C)<br>(2) Proposed Order |

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center, 7th Floor
San Francisco, California 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT ............................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

STATEMENT OF ISSUES ............................................................................... 2

I.   INTRODUCTION ................................................................................... 3

II.  BACKGROUND AND RELEVANT FACTS ................................................ 4

     A.  Procedural History. ....................................................................... 4

     B.  YouTube And Its Terms Of Service. ................................................ 4

     C.  Plaintiff's Prior Dismissed Action Against YouTube In This Court. ....................... 5

     D.  Plaintiff's Current Action. ............................................................. 7

III. LEGAL STANDARD ............................................................................. 8

IV.  ARGUMENT ....................................................................................... 9

     A.  Plaintiff's Action Is Barred By *Res Judicata*. .................................... 9

     B.  Plaintiff Has No DMCA Claim Against Defendants. ......................... 11

     C.  YouTube's Terms Of Service Bar This Action. ................................. 14

     D.  The First Amendment Bars This Action. .......................................... 15

     E.  Plaintiff's State Law Claims Fail On Numerous Other Independent Grounds. ............ 15

          1.  The State Law Claims Are Preempted By The Copyright Act And
              Precluded By The TOS. ......................................................... 15

          2.  Section 230 Of The CDA Bars The State Law Claims. ................. 17

          3.  The State Law Claims Fail To State A Claim On Which Relief Can Be Granted. ... 19

               a. The Claim For Intentional Interference With Business Relations Fails. ............ 19

               b. The FDUTPA Claim Fails. .............................................. 19

               c. The Intentional Infliction Of Emotional Distress Claim Fails. ....................... 20

     F.  Plaintiff's Claims Against Mr. Pichai Must Also Be Dismissed For The
         Additional Reason That No Actionable Conduct By Mr. Pichai Is Alleged. .............. 22

V.   CONCLUSION. ................................................................................... 22

Ntc. of Mot. & Mot. to Dismiss; MPA                                    Case No. 24-cv-08661-WHA

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

<u>**Cases**</u>

4

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,*
   2011 WL 2690437 (N.D. Cal. July 8, 2011) ……………………………….……………. 16

5

*Am. Freedom Def. Initiative v. Lynch,*
   217 F.Supp.3d 100 (D.D.C. 2016) …………………………………………………………… 18

6

7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) …………………………………………………………………………. 9, 13

8

9

*Baker v. Google LLC,*
   2024 WL 3551878 (D.D.C. July 26, 2024) ……………………………………………… 21, 22

10

*Barnes v. Yahoo!, Inc.,*
   570 F.3d 1096 (9th Cir. 2009) …………………………………………………………... 17

11

12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) …………………………………………………………………………… 8

13

14

*Bilal v. Geo Care, LLC,*
   981 F.3d 903 (11th Cir. 2020) …………………………………………………………… 9

15

16

*Braun v. Google LLC,*
   2018 WL 6460253 (N.D. Cal. Dec. 10, 2018) ………………………………………… 11

17

18

*Casterlow-Bey v. Google.com Inc.,*
   2017 WL 6732787 (W.D. Wash. Dec. 28, 2017) …………………………………… 12

19

*Children's Health Defense v. Facebook Inc.,*
   546 F.Supp.3d 909 (N.D. Cal. June 29, 2021) ……………………………………… 22

20

21

*Chukwurah v. Google, LLC,*
   2020 WL 510158 (D. Md. Jan. 31, 2020) …………………………………………… 22

22

23

*Damabeh v. 7-Eleven, Inc.,*
   2013 WL 1915867 (N.D. Cal. May 8, 2013) ………………………………………....… 19

24

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
   902 P.2d 740 (1995) ……………………………………………………………………… 19

25

26

*DeLima v. Google, Inc.,*
   561 F.Supp.3d 123 (D.N.H. 2021) ……………………………………………………… 21

27

28

*Divino Group LLC v. Google LLC,*
   2022 WL 4625076 (N.D. Cal. Sept. 30, 2022) ……………………………………… 18

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

1

*Doe v. Google LLC,*
2022 WL 17077497 (9th Cir. Nov. 18, 2022) ………………………………………… 5

2

*Epstein v. Wash. Energy Co.,*
83 F.3d 1136 (9th Cir. 1996) …………………………………………….…… 9

3

4

*Fair Hous. Council v. Roommates.com, LLC,*
521 F.3d 1157 (9th Cir. 2008) ………………………………………………... 17

5

*Federated Dep't Stores, Inc. v. Moitie,*
452 U.S. 394 (1981) ……………………………………………………...…… 9

6

7

*Fresno Motors, LLC v. Mercedes Benz USA, LLC,*
771 F.3d 1119 (9th Cir. 2014) ………………………………………………..… 19

8

9

*Gonzalez v. Planned Parenthood of L.A.,*
759 F.3d 1112 (9th Cir. 2014) ………………………………………………… 9

10

11

*Green v. AOL,*
318 F.3d 465 (3d Cir. 2003) …………………………………………………… 18

12

13

*Habeeb v. State Farm Fire and Cas. Co.,*
51 F.3d 280, 1995 WL 139229 (9th Cir. 1995) ……………………………………… 20

14

15

*Herssein Law Grp. v. Reed Elsevier, Inc.,*
2014 WL 11370411 (S.D. Fla. Mar. 5, 2014) …………………………………..…… 20

16

*Howard v. City of Coos Bay,*
871 F.3d 1032 (9th Cir. 2017) …………………………………………….…… 10

17

18

*Hughes v. Pair,*
46 Cal.4th 1035 (2009) ……………………………………………………… 21

19

20

*Ilkhchooyi v. Best,*
37 Cal.App.4th 395 (1995) …………………………………………………..… 16

21

22

*In re Schimmels,*
127 F.3d 875 (9th Cir. 1997) ………………………………………………….. 9

23

*Ivey v. Bd. of Regents of the Univ. of Alaska,*
673 F.2d 266 (9th Cir. 1982) ………………………………………………….. 9

24

25

*Kifle v. YouTube LLC,*
2021 WL 10331555 (N.D. Cal. Oct. 5, 2021) …………………………………..… 17

26

27

*King v. Facebook, Inc.,*
572 F.Supp.3d 776 (N.D. Cal. 2021) ………………………………………………… 21

28

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

iii

1

*Lancaster v. Alphabet Inc.,*
2016 WL 3648608 (N.D. Cal. July 8, 2016) …………………………………………... 17, 21

2

3

*Lewis v. Google, LLC,*
851 F. App'x 723 (9th Cir. 2021) ……………………………………….……. 18

4

5

*Marin Tug & Barge, Inc. v. Westport Petro., Inc.,*
271 F.3d 825 (9th Cir. 2001) …………………………………………………… 19

6

*Mercola.com, LLC v. Google LLC,*
2023 WL 5680112 (N.D. Cal. Sept. 4, 2023) ……………………………………………… 5

7

8

*Miami Herald Pub. Co. v. Tornillo,*
418 U.S. 241 (1974) …………………………………………………..… 15

9

10

*Mishiyev v. Alphabet, Inc., et al.,*
444 F.Supp.3d 1154 (N.D. Cal. 2020) ………………………………… 3, 4, 5, 6, 7, 10, 14, 16, 19

11

12

*Mishiyev v. Alphabet, Inc., et al.,*
857 F. App'x 907 (9th Cir. 2021) …………………………………………… 3, 7

13

14

*Mishiyev v. Alphabet, Inc., et al.,*
142 S.Ct. 873 (U.S. 2022) ……………………………………………….... 3, 7

15

*Mishiyev v. UMG Recordings, Inc.,*
No. 8:23-cv-1942-MSS-NHA, (M.D. Fla.) ……………………………….. 8, 16

16

17

*Mishiyev v. YouTube, LLC and Sundar Pichai,*
No. 21-CA-007563 (Hillsborough County, FL Circuit Court) ……………………………... 7

18

*Montana v. U.S.,*
440 U.S. 147 (1979) …………………………………………………..…. 9

19

20

*Montano v. Wash. State Dep't of Health,*
2024 WL 3029155 (S.D. Fla. May 28, 2024) …………………………………… 21

21

22

*Moody v. NetChoice, LLC,*
144 S.Ct. 2383 (U.S. 2024) …………………………………………….... 7, 15

23

24

*Prager Univ. v. Google LLC,*
951 F.3d 991 (9th Cir. 2020) ………………………………………… 4, 5, 18

25

*Prager Univ. v. Google LLC,*
85 Cal.App.5th 1022 (Cal. Ct. App. 2022) …………………………………... 17

26

27

*Ramani v. YouTube LLC,*
2024 WL 251403 (N.D. Cal. Jan. 23, 2024) …………………………………... 9, 10, 11

28

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

*Schneider v. YouTube, LLC,*
674 F.Supp.3d 704 (N.D. Cal. 2023) ......................................................... 12

*Song Fi Inc. v. Google, Inc.,*
108 F.Supp.3d 876 (N.D. Cal. 2015) ......................................................... 14

*Sonner v. Premier Nutrition Corp.,*
49 F.4th 1300 (9th Cir. 2022) ................................................................... 9

*Stebbins v. Polano,*
2021 WL 4866359 (N.D. Cal. Aug. 19, 2021) ............................................. 9

*Stevens v. Vodka & Milk, LLC,*
2018 WL 11222927 (S.D.N.Y. Mar. 12, 2018) ........................................... 16

*Sweet v. Google, Inc.,*
2018 WL 1184777 (N.D. Cal. Mar. 7, 2018) .............................................. 14

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,*
322 F.3d 1064 (9th Cir. 2003) ................................................................. 10

*Trerice v. Blue Cross of Cal.,*
209 Cal.App.3d 878 (1989) ..................................................................... 20

*Trump v. Twitter, Inc.,*
602 F.Supp.3d 1213 (N.D. Cal. 2022) ........................................... 16, 18, 20

*Trump v. YouTube, LLC,*
2021 WL 8398892 (S.D. Fla. Oct. 6, 2021) ................................................. 5

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.,*
117 F.Supp.3d 1092 (C.D. Cal. 2015) ....................................................... 19

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,*
718 F.3d 1006 (9th Cir. 2013) ................................................................. 11

*Warner Chappell Music, Inc. v. Nealy,*
601 U.S. 366 (2024) ................................................................................ 7

**Statutes**

Fla. Stat. §§ 501.201, et seq. ..................................................................... 2

Fla. Stat. § 501.204 ................................................................................ 20

17 U.S.C. § 512 ...................................................................................... 11

17 U.S.C. § 512(f) ......................................................................... 2, 8, 12

17 U.S.C. § 512(l) ................................................................................... 12

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Bryan Cave Leighton Paisner LLP*
*3 Embarcadero Center 7th Floor*
*San Francisco, California 94111*

47 U.S.C. § 230 ……………………………………………………………….. 2, 17, 18

47 U.S.C. § 230(e) ……………………………………………………………. 17

47 U.S.C. § 230(f)(2) ………………………………………………………..... 17

**Rules**

Fed. R. Civ. P. § 12(b)(6) …………………………………………………...… 1, 2, 6, 8, 9

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

## NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

**TO PRO SE PLAINTIFF:**

PLEASE TAKE NOTICE that on April 10, 2025, at 8:00 am or as soon thereafter as the matter may be heard before Judge William H. Alsup, in Courtroom 12 of the above-captioned Court, located at the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants YouTube, LLC ("*YouTube*") and Sundar Pichai ("*Mr. Pichai*") (collectively, "*Defendants*") will and hereby do move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice this action brought by *pro se* Plaintiff Erik Mishiyev ("*Plaintiff*" or "*Mishiyev*"), as barred by *res judicata* and for other failures to state a claim for relief.

Defendants seek the Court's order dismissing this action without leave to amend. This relief is sought on the grounds that this Court can determine as a matter of law that the Complaint fails to state a claim for relief, and amendment would be futile.

The Motion to Dismiss is based on this notice and motion, the memorandum of points and authorities, all the pleadings and papers in this action, the Request for Judicial Notice and documents attached as Exhibits A–C thereto which may be considered on a Rule 12(b)(6) motion, on such arguments as may be presented at the hearing, and such other matters that may come before the Court prior to its disposition of this motion.

Dated: February 19, 2025          **BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Damon J. Whitaker*
          Damon J. Whitaker

Attorneys for Defendants
YOUTUBE, LLC and SUNDAR PICHAI

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES

1.      Should Plaintiff's action be dismissed with prejudice in its entirety under Rule 12(b)(6) because it is barred by the doctrine of *res judicata*?

2.      In the alternative, should Plaintiff's Count III claim for misrepresentations in takedown notices under the Digital Millennium Copyright Act ("**DMCA**") be dismissed with prejudice under Rule 12(b)(6) because 17 U.S.C § 512(f) does not create a cause of action against online service providers like YouTube and the Complaint concedes the alleged DMCA notices at issue were submitted to YouTube by third-parties and not by Defendants?

3.      In the alternative, should Plaintiff's action be dismissed with prejudice under Rule 12(b)(6) because Plaintiff's claims are precluded by YouTube's Terms of Service ("**TOS**")?

4.      In the alternative, should Plaintiff's action be dismissed with prejudice under Rule 12(b)(6) because Plaintiff's claims are precluded by the First Amendment?

5.      In the alternative, should Plaintiff's state law claims for intentional interference with business relationships (Count I), violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*, "**FDUTPA**" (Count II), and intentional infliction of emotional distress (Count IV, "**IIED**") (collectively, the "**State Law Claims**") be dismissed with prejudice under Rule 12(b)(6) because they are preempted by the U.S. Copyright Act?

6.      In the alternative, should Plaintiff's State Law Claims be dismissed with prejudice under Rule 12(b)(6) because they are barred by Section 230 of the Communications Decency Act (47 U.S.C. § 230, "**Section 230**" or the "**CDA**")?

7.      In the alternative, should Plaintiff's State Law Claims be dismissed with prejudice under Rule 12(b)(6) because the Complaint does not, and Plaintiff cannot, plead facts establishing every necessary element of each claim?

8.      In the alternative, should Plaintiff's action against the Chief Executive Officer of Google LLC and Alphabet, Inc. be dismissed with prejudice under Rule 12(b)(6) because the Complaint does not, and Plaintiff cannot, plead any conduct or involvement by Mr. Pichai other than his position as an officer of YouTube's parent and holding companies?

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

## I.    INTRODUCTION

This pro se action seeking reinstatement of Plaintiff's YouTube channels was dismissed with prejudice by the Court in 2020. *Mishiyev v. Alphabet, Inc., et al.*, 444 F.Supp.3d 1154 (N.D. Cal. 2020) (Alsup, J.), *aff'd* 857 F. App'x 907 (9th Cir. Aug. 27, 2021), *cert. denied* 142 S.Ct. 873 (U.S. Jan. 18, 2022) ("***Mishiyev I***"). The current action is nearly identical to that previous case, which Plaintiff sought to revive by bringing successive lawsuits in Florida state court. The current action is barred in its entirety by *res judicata*, and if not, the individual claims fail on their own.

Plaintiff is a DJ who published videos containing copyrighted songs owned by others on his YouTube channels. Not surprisingly, third-party copyright owners objected to his infringing activities by submitting numerous DMCA takedown notices to YouTube, resulting in the removal of his videos and termination of Plaintiff's YouTube channels (as allowed under the TOS). Then-represented by counsel, Plaintiff sued YouTube in 2019 for breach of the TOS, tortious interference, and negligence in this District. This Court dismissed that action with prejudice, the Ninth Circuit affirmed the dismissal, and the Supreme Court refused discretionary review.

Plaintiff has repeatedly sought to relitigate this dispute, with the current action being the third litigation he has brought against YouTube (and the second litigation he has brought against Mr. Pichai). This action is based on identical facts as *Mishiyev I* and was transferred to this District on Defendants' motion after removing the case to the Middle District of Florida ("***M.D. Fla.***"). The only difference from *Mishiyev I* is that Plaintiff has since attempted to circumvent YouTube's TOS by creating "new" channels on YouTube with a predictable result: the channels were terminated for repeated material breaches of the TOS. Plaintiff's Complaint asserts the same tortious interference claim plus three other legal theories Plaintiff could have raised in *Mishiyev I*.

This Court's judgment in *Mishiyev I* bars this entire action under the doctrine of *res judicata*. While the Complaint can be dismissed on that ground alone, Plaintiff's claims also fail for a myriad of additional independent reasons. For example: the DMCA claim fails because Section 512(f) does not provide a cause of action against YouTube; the First Amendment, the CDA, and the TOS all bar liability for any YouTube decision to remove content and shutter Plaintiff's YouTube channels; and all of the State Law Claims are pre-empted by the Copyright

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

Act. The State Law Claims also fail because the Complaint does not allege facts establishing each element (with the tortious interference claim suffering from the same fatal deficiencies as in *Mishiyev I*). Finally, the Complaint cannot state a claim against Mr. Pichai by merely speculating he is personally responsible for YouTube's alleged conduct because he is the CEO of YouTube's parent and holding companies.

## II.    BACKGROUND AND RELEVANT FACTS

### A.    Procedural History.

Plaintiff filed this action in October 2024 against YouTube and the CEO of its parent and holding companies, Mr. Pichai, in Florida state court. (Dkt. 1-3.) Defendants removed the action to the M.D. Fla., identified *Mishiyev I* as a related case, moved to transfer to this District, and obtained a stay of the action and their deadline to respond to the Complaint. (Dkt. 1, 9, 10, 11 & 12.) The M.D. Fla. transferred this action to this District effective December 3, 2024 based on the forum-selection clause in YouTube's TOS because Plaintiff's claims "relate to YouTube's exercise of its discretionary authority to remove content that allegedly infringes on third parties' intellectual property rights." (Dkt. 19 at 3-4, 5.) The action was then stayed pending the resolution of Plaintiff's appeals of the removal to federal court and the M.D. Fla.'s transfer order. (Dkt. 33, 34, 35 & 36.)

The Eleventh Circuit Court of Appeals dismissed Plaintiff's appeal of the transfer order on January 3, 2025, and pursuant to 11th Circuit Rule 27-5, refused to consider Plaintiff's subsequent motion to reinstate his appeal. On January 30, 2025, the Florida Second District Court of Appeals dismissed Plaintiff's appeal of the removal to federal court, for lack of jurisdiction.

This Court issued its Related Case Order on January 10, 2025, finding the action is related to *Mishiyev I* and directing its reassignment to The Honorable William H. Alsup. (Dkt. 38.)

### B.    YouTube And Its Terms Of Service.

YouTube operates a free online video-sharing service that allows users to upload videos to their channels on the YouTube website and to view other user's videos. *E.g.*, *Prager Univ. v. Google LLC*, 951 F.3d 991, 995 (9th Cir. 2020); *Mishiyev I*, 444 F.Supp.3d at 1156. (*Accord* Compl., Dkt. 1-3, ¶ 16.) Access to and continued operation of a YouTube account is governed by

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

YouTube's TOS, which every user must agree to and accept when creating an account and when uploading videos. *E.g.*, Transfer Order, Dkt. 19 at 3-4, 5; *Prager Univ.*, 951 F.3d at 995 (9th Cir. 2020); *Trump v. YouTube, LLC*, 2021 WL 8398892, *2, *10 (S.D. Fla. Oct. 6, 2021).

A copy of the TOS in effect at the time Plaintiff filed the current action is attached as Exhibit A to the Request for Judicial Notice. Most relevant, pursuant to the TOS:

1) YouTube is not obligated to publish or host any user videos (Ex. A at 4);

2) users are prohibited from uploading content that infringes the intellectual property rights of others or otherwise violates the law or the TOS (*id*. at 8);

3) YouTube has the right to remove user videos and terminate user accounts in its sole discretion, including for repeat allegations of copyright infringement (*id*. at 9, 10-11);

4) users cannot use another channel to circumvent restrictions or terminations resulting from their prior violation of the TOS (*id*. at 10); and

5) all claims involving the YouTube service or TOS are governed by California law, excluding California's conflict of laws rules (*id*. at 15).

*See also Doe v. Google LLC*, 2022 WL 17077497, *1 (9th Cir. Nov. 18, 2022); *Prager Univ.*, 951 F.3d at 995; *Mercola.com, LLC v. Google LLC*, 2023 WL 5680112, *1-2 (N.D. Cal. Sept. 4, 2023); *Mishiyev I*, 444 F.Supp.3d at 1156-57; Transfer Order, Dkt. 19, at 3, 5. In sum, YouTube is not obligated to host user content, and can remove content or terminate user channels and accounts in its discretion. *E.g.*, *Mishiyev I*, 444 F.Supp.3d at 1156-57 ("The [TOS] vested YouTube with significant control over the operation of its service, including the ability to remove uploaded content.").

**C.    Plaintiff's Prior Dismissed Action Against YouTube In This Court.**

In 2019, Plaintiff sued YouTube and its parent company Google LLC ("***Google***"), among others, in this Court. Plaintiff asserted claims for breach of YouTube's TOS, negligence, and intentional interference with contract and prospective business based on YouTube's termination of Plaintiff's YouTube channels and removal of all of his videos in **2018 and 2019**, including videos containing "DJ mixes" of other's songs, in response to numerous third-party DMCA copyright infringement notices. *Mishiyev I*, 444 F.Supp.3d at 1154, 1156. Plaintiff alleged he

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

began receiving DMCA takedown claims against his most profitable videos in March 2016, initially rebutted such claims through counter-notices, and increased his subscribers on YouTube, but had fewer views of his videos than similar channels with fewer subscribers. *Id.* at 1157. Plaintiff accused YouTube of failing to distribute his videos to his subscribers, demanded certain subscriber viewing information that YouTube's support team explained they could not provide, and Plaintiff then made repeated threats against YouTube's employees. *Id.* at 1157-58. YouTube then sent Plaintiff a notice on December 14, 2018, outlining the actions YouTube was taking to address Plaintiff's threats made to its employees. *Id.* at 1158.[1]

According to Plaintiff, the number of DMCA claims against him skyrocketed after the December 2018 notice, prompting YouTube to block public access to his videos on January 22, 2019, after rejecting his duplicative counter-notices. *Id.* at 1158. In a May 2019 email, YouTube explained to Plaintiff that it terminated his channels because they had received more than three copyright strikes, his counter-notices failed to show he had the necessary rights to post the third-party content on YouTube, and any new counter-notices would be automatically rejected. *Id.* Plaintiff alleged the termination of his account caused him damages, including lost new subscribers, bookings to perform as a DJ, and advertising and sponsorship revenues. *Id.*

By Order issued March 13, 2020, this Court dismissed all of Plaintiff's claims with prejudice pursuant to Rule 12(b)(6) because the TOS authorized YouTube's removal of Plaintiff's videos and termination of his accounts. *Mishiyev I*, 444 F.Supp.3d at 1159-61. First, the Court ruled there could be no breach of contract because the TOS: 1) give YouTube discretion to remove Plaintiff's videos in response to DMCA infringement notices without acting as a neutral to resolve DMCA notices and counter-notices; and 2) authorize YouTube, in its sole discretion, to determine if Plaintiff had the necessary rights to use the challenged content in his videos. *Id.* at 1159-60. Second, the Court ruled there could be no negligence claims because YouTube did not have an independent duty to Plaintiff outside the TOS. *Id.* at 1160. Finally, the Court ruled there could be no tortious interference claims because Plaintiff did not identify a specific contract or

---

[1] After reviewing the communications, the Court rejected Plaintiff's mischaracterizations that he merely threatened to sue YouTube and that YouTube retaliated against him. *Id.* at 1157-58.

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

economic relationship between Plaintiff and a third-party, the advertising revenues he allegedly lost would have come from YouTube pursuant to the parties' agreement, and any opportunities Plaintiff may have gained if his account was not terminated were speculative. *Id.* at 1160-61.

The Ninth Circuit affirmed the dismissal with prejudice on August 27, 2021. *Mishiyev I*, 857 F. App'x 907. The U.S. Supreme Court denied Plaintiff's petition for certiorari on January 18, 2022. *Mishiyev I*, 142 S.Ct. 873.

**D.    Plaintiff's Current Action.**

Plaintiff's current action repeats the same story as *Mishiyev I*.[2] (*See* Compl. ¶¶ 12-13, 21, 28-32.) Again, Plaintiff alleges he is an independent self-employed DJ who created a YouTube account in 2007 and had several YouTube channels, amassed thousands of followers, but was then "censored, shadow-banned and bombarded with copyright fraudulent takedown/copyright infringement complaints" in 2018 once he was becoming popular and/or expressed politically conservative viewpoints. (*Id.* ¶¶ 16, 18, 21.) Plaintiff again claims that in response to those third-party complaints, YouTube removed Plaintiff's videos and then permanently cancelled his YouTube channels after giving him notice, and again mischaracterizes this termination as retaliation for his threat to sue YouTube. (*See id.* ¶¶ 21, 28-32.) The Complaint relies on the same December 14, 2018 and May 3, 2019 notices from YouTube. (*Compare id.* ¶¶ 21 & 76-77 *with Mishiyev I,* 444 F.Supp.3d at 1158.) The Complaint further relies on the Supreme Court's copyright statute of limitations ruling in *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024), to try to justify bringing Plaintiff's current action for the conduct previously addressed in *Mishiyev I.* (*See* Compl. ¶¶ 7-12.) The Complaint reasserts the same tortious interference with business relations claim Plaintiff lost in *Mishiyev I* (Count I), and adds three different legal theories based on the same facts: 1) misrepresentations in DMCA notices in violation of 17 U.S.C. § 512(f) (Count III); 2) violation of the FDUTPA (Count II); and 3) IIED (Count IV).

---

[2] This is actually Plaintiff's third litigation against YouTube and second against Mr. Pichai over the same dispute. On September 20, 2021, just weeks after the Ninth Circuit affirmed this Court's dismissal in *Mishiyev I*, Plaintiff filed the same case against Defendants in Florida state court, which was dismissed in May 2022 for failure to prosecute. *See Mishiyev v. YouTube, LLC and Sundar Pichai*, Circuit Court for Hillsborough County, Florida, Case No. 21-CA-007563.

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

The Complaint also attempts to base liability on conduct occurring after *Mishiyev I.* That conduct, however, is merely a continuation of the conduct the Court ruled was legal in *Mishiyev I.* Specifically, Plaintiff alleges he started at least one new YouTube channel, but it was terminated on October 24, 2022 due to third-party DMCA infringement complaints, and that he has continued to receive third-party DMCA complaints through October 2024. (*See* Compl. ¶¶ 12-14, 30-32, 71.) Significantly, YouTube terminated this new channel in 2022 because it was linked to one of the channels terminated per *Mishiyev I* for having unresolved copyright infringement strikes.[3] Yet, as to this "new" channel, the Complaint asserts unspecified third parties ("Plaintiff's competitors in the TV and Music Industry" and "the major labels and the artists or DJs signed to these labels") allegedly submitted fraudulent DMCA infringement notices against Plaintiff's videos, but the Complaint does not identify or provide the content of a single notice or explain how it was false or fraudulent. (*See* Compl. ¶¶ 12-13, 15, 68.) Without a single supporting fact, Plaintiff then speculates that YouTube and Mr. Pichai are "associates" of and "colluded" with the unidentified third-parties to eliminate Plaintiff as a competitor in the music industry. (*See, e.g.*, *id.* ¶¶ 13, 15.) The Complaint's only fact allegation about Mr. Pichai is that he is the CEO of Google and Alphabet, Inc., which Plaintiff speculates makes Mr. Pichai responsible for YouTube's alleged acts. (*Id.* p.1 & ¶ 3.)

### III.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion, Plaintiff must allege a plausible basis for liability supported by non-conclusory allegations of fact. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice", and the Court should not accept conclusory allegations, unwarranted inferences, and legal conclusions as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79

---

[3] Plaintiff acknowledges this fact in his pending DMCA notice lawsuit against the third-party recording companies who allegedly sent the DMCA notices to YouTube at issue here. *See* Plaintiff's "Exhibit C" to his amended complaint in *Mishiyev v. UMG Recordings, Inc., et al.*, No. 8:23-cv-1942-MSS-NHA (M.D. Fla.) ("***UMG Recordings***"), a copy of which is attached as <u>Exhibit C</u> to Defendants' Request for Judicial Notice in this case. Moreover, YouTube's email informed Plaintiff he could not "access, possess, or create any other YouTube accounts" unless he resolved the copyright strikes against his channels terminated per *Mishiyev I.* (*See* <u>Ex. C</u>.)

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

Ntc. of Mot. & Mot. to Dismiss; MPA                    Case No. 24-cv-08661-WHA

(2009); *accord Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Allegations that contradict documents incorporated by reference or attached to the complaint should also be rejected. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014). Although *pro se* pleadings are liberally construed, the Court cannot "'supply essential elements of the claim that were not initially pled'", infer any un-asserted claim, "act as 'de facto counsel'", or "'rewrite [Plaintiff's] otherwise deficient pleading to sustain an action'." *E.g.*, *Stebbins v. Polano*, 2021 WL 4866359, *2 (N.D. Cal. Aug. 19, 2021) (quoting *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982), and *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020)).

## IV.    ARGUMENT

### A.    Plaintiff's Action Is Barred By *Res Judicata*.

The Court should dismiss this action with prejudice because the judgment in *Mishiyev I* bars this action in its entirety. The doctrine of res judicata "provides that 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Montana v. U.S.*, 440 U.S. 147, 153-54 (1979)); *see also Montana*, 440 U.S. at 153-54 (where party had "full and fair opportunity to litigate," res judicata "protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions"). "Res judicata applies when the earlier action '(1) involved the same "claim" or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies.'" *Ramani v. YouTube LLC*, 2024 WL 251403, *2 (N.D. Cal. Jan. 23, 2024) (quoting *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300, 1306 (9th Cir. 2022)) (cleaned up). All three elements are met here and bar Plaintiff's vexatious lawsuit.

First, the Court's dismissal with prejudice of Plaintiff's action in *Mishiyev I* is a final judgment on the merits. *E.g.*, *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 (1981) (Rule 12(b)(6) dismissal is a judgment on merits); *Ramani*, 2024 WL 251403 at *2 (same). Second, both actions involve identical parties because Plaintiff sued YouTube in both actions. *E.g.*, *Ramani*, 2024 WL 251403 at *2 (dismissing action against YouTube with prejudice based on *res judicata*). Mr. Pichai need not be considered because there are no fact allegations involving

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

any conduct by him. *See infra* § IV.F. Regardless, Mr. Pichai is in privity with Google as its CEO, and Google was a defendant in *Mishiyev I* and is YouTube's parent company. Plaintiff is improperly trying to exploit that very connection to include Mr. Pichai in this lawsuit.

Third, there is an identity of claims between *Mishiyev I* and this action. Plaintiff need not assert identical legal theories. Instead, "[i]dentity of claims exists when two suits arise from the same transactional nucleus of facts", and "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) (internal quotations and citations omitted). The Court may also consider the following factors: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; [and] (3) whether the two suits involve infringement of the same right." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017).

Plaintiff's current action is based on the same factual predicate and purported rights and duties as *Mishiyev I*. Both actions involve the removal of Plaintiff's videos and termination of his YouTube channels due to a throng of third-party accusations of copyright infringement — predominantly the exact same DMCA infringement notices and resulting takedowns and channel terminations in 2018 and 2019 held lawful in *Mishiyev I*. (*See* Compl. ¶¶ 12-13, 21, 76-77.) Even granting Plaintiff the greatest leeway possible for a *pro se* party, his attempt to use the Supreme Court's copyright statute of limitations ruling to revive his lost case leaves no doubt there is an identity of claims between this action and *Mishiyev I*. Indeed, this Court's succinct explanation in *Mishiyev I* applies to both cases: "[a]t bottom, this action is about YouTube's decision to terminate plaintiff's account and disable the channels associated with it." *Mishiyev I*, 444 F.Supp.3d at 1156. Hence, the third element for *res judicata* is met.

Plaintiff cannot escape the *res judicata* bar by alleging similar continuing conduct after *Mishiyev I*. The Complaint refers generally to continuing DMCA notices and takedowns, alleges YouTube's October 24, 2022 termination of a "new" channel for the same reasons Plaintiff's prior *Mishiyev I* channels were terminated (*i.e.*, for being linked to one of those prior channels

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

terminated for repeat infringement), and identifies one October 2024 email exchange where his duplicative DMCA counter-notices were rejected, which all has a substantive and temporal connection to the conduct in *Mishiyev I. See Braun v. Google LLC*, 2018 WL 6460253, *2 (N.D. Cal. Dec. 10, 2018) (new action based on alleged continuing unauthorized access to plaintiff's Gmail account barred by dismissal of prior action based on such alleged access). Furthermore, the current Complaint includes the identical tortious interference theory previously dismissed in *Mishiyev I*, and Plaintiff could have raised all three additional legal theories in *Mishiyev I*.

Each of the additional factors the Court may consider further establishes the "identity of claims" required for *res judicata*. First, the rights and interests established in *Mishiyev I* — YouTube's right to remove Plaintiff's videos and terminate his channels — could be impaired by re-litigating these issues in this later action. Second, Plaintiff relies on the same allegations he presented in *Mishiyev I* (and the continuation of that conduct), including the exact same termination notices / emails he received from YouTube. Third, both actions involve infringement of the same rights: YouTube's right to decide what content to host on its platform and its right to enforce its TOS versus Plaintiff's misguided belief that he can dictate what YouTube publishes.

Because *res judicata* bars the current action in full, Plaintiff's Complaint should be dismissed with prejudice. *See Ramani*, 2024 WL 251403 at *3; *Braun*, 2018 WL 6460253 at *3. While the Court may render final judgment on this basis alone, Defendants address below other independent grounds all additionally requiring that this action be dismissed with prejudice.

**B.    Plaintiff Has No DMCA Claim Against Defendants.**

Count III for misrepresentation in DMCA takedown notices independently fails because 17 U.S.C. § 512 does not provide a claim against online service providers like YouTube. Instead, Section 512 of the DMCA provides online service providers an optional safe harbor from copyright infringement claims based on content posted by users. *See UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014-15, 1031 (9th Cir. 2013) (§ 512(c) immunized online video sharing service from copyright infringement liability for user-posted videos). Failure to comply with the DMCA process only makes YouTube ineligible for that safe harbor. *See, e.g.,*

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

17 U.S.C. § 512(l); *Schneider v. YouTube, LLC*, 674 F.Supp.3d 704, 719-20 (N.D. Cal. 2023); *Casterlow-Bey v. Google.com Inc.*, 2017 WL 6732787, *5 (W.D. Wash. Dec. 28, 2017).

Section 512 is inapplicable here because Plaintiff does not assert a copyright infringement claim against Defendants. Instead, Plaintiff attempts a novel and frivolous application of the DMCA: attempting to hold Defendants liable for misleading or false takedown notices that YouTube received from third-parties. The claim fails on its face due to the plain language of the statute.

While Section 512(f) provides a limited cause of action against copyright owners and users of online services for misrepresentations in takedown notices and counter-notices, respectively, it **does not create a cause of action against online service providers like YouTube**. To the contrary, the DMCA provides a cause of action to: 1) both Plaintiff and YouTube (as the service provider) **against a third party who submits a fraudulent DMCA notice**; and 2) both copyright claimants and YouTube (as the service provider) **against Plaintiff or another third party who submits a fraudulent DMCA counter-notice**. Specifically, Section 512(f) provides:

> Any person who knowingly materially misrepresents under this section-- (1) that material or activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or [their] licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f).

Claims under Section 512(f) for misrepresentation in DMCA takedown notices or counter-notices cannot be brought against online service providers like YouTube due to the very structure and language of the statute and the nature of the actions service providers take when availing themselves of the DMCA safe harbor. Instead, Section 512(f) provides for two limited causes of action, depending on the type of notice in which the alleged misrepresentation occurred. First, subsection 512(f)(1) provides a cause of action for the online service provider or the user of that service for misrepresentations made by the copyright claimant in a DMCA takedown request.

Second, subsection 512(f)(2) provides a cause of action for the online service provider or the copyright claimant for misrepresentations made by the user of the service in a DMCA counter-notice. Since service providers do not submit DMCA takedown notices or counter-notifications to themselves, no Section 512(f) claim can lie against YouTube as the service provider as a matter of law.

Furthermore, the limited cause of action under Section 512(f) arises out of misrepresentations: 1) by the copyright claimant as to the ownership and rights to enforce the identified copyrights or the infringing nature of the user's challenged conduct; or 2) by the user as to the non-infringing nature or misidentification of their content. When acting in response to DMCA takedown notices or counter-notices, online service providers like YouTube are not making any representations subject to the statute. To the contrary, YouTube's removal of content in response to a claimant's valid takedown request or reposting content in response to a YouTube user's valid counter-notification merely qualifies YouTube for the safe harbor against copyright infringement liability, and nothing more. Hence, because YouTube makes no relevant representations to the claimant or user in connection with any DMCA takedown notice or counter-notice, it cannot have made any **misrepresentation** that could possibly lead to a Section 512(f) claim.[4]

In sum, Plaintiff cannot have a Section 512(f) claim against Defendants if the gravamen of the claim is that a third-party submitted a fraudulent DMCA takedown notice to YouTube. Yet, that is exactly what Plaintiff tries to assert here. The Complaint alleges that third-parties (*i.e.*, the "Major Record labels") made the accused DMCA notices — not YouTube or Mr. Pichai — and that those third-parties submitted the notices to YouTube. (*E.g.*, Compl. ¶¶ 12, 28-32.)[5] Hence, the Complaint's own allegations are fatal to Count III, which should be dismissed with prejudice.

---

[4] Plaintiff understands these limitations, as he has separately sued the claimants who allegedly made the DMCA notices and only brought this action after his Section 512(f) claim was initially dismissed in his *UMG Recordings* case.

[5] The Court must reject Plaintiff's unsupported conclusory allegations that Defendants are colluding or affiliated with these third parties. *See Ashcroft,* 556 U.S. at 678. They are not.

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

**C.    YouTube's Terms Of Service Bar This Action.**

Plaintiff's claims also fail because, as the Court ruled in *Mishiyev I*, YouTube's actions are expressly authorized by the TOS. *Mishiyev I*, 444 F.Supp.3d at 1159-60; *accord Song Fi Inc. v. Google, Inc.*, 108 F.Supp.3d 876, 880, 885 (N.D. Cal. 2015) (Conti, J.) (dismissing contract claim based on removal of plaintiff's video because the TOS gives YouTube the right to determine if content violates the TOS and the sole discretion to remove content and discontinue any aspect of the service); *Sweet v. Google, Inc.*, 2018 WL 1184777, *1, *4-10 (N.D. Cal. Mar. 7, 2018) (Chen, J.) (dismissing contract and tort claims because the TOS give YouTube complete discretion over whether and when to run ads alongside users' videos).

To the extent Plaintiff's "new" claims rely on YouTube's content removal and termination of Plaintiff's channels in 2018 and 2019, this Court explained that pursuant to its TOS, YouTube: 1) does not permit copyright infringement; 2) will remove content accused of infringement if properly notified about it; 3) has sole discretion whether to restore removed content even if a user submits a counter-notice; 4) is not required to act as a neutral processor of DMCA notices and counter-notices; 5) determined Plaintiff did not have the rights to use the identified content in his videos; and 6) merely exercised its express contractual rights in removing Plaintiff's videos and terminating his channels. *Mishiyev I*, 444 F.Supp.3d at 1156-57, 1159-60.

This same reasoning also bars Plaintiff's "new" claims to the extent they are based on YouTube allegedly removing content from and terminating Plaintiff's channel(s) he created after *Mishiyev I*. Moreover, YouTube need not rely on the continuing third-party accusations of copyright infringement against Plaintiff's channel(s) to exercise its contractual rights to remove his content and terminate his account(s), or to decline to restore content and accounts. Instead, YouTube may remove content and terminate channels or accounts for any violation of the TOS, not just repeat infringement accusations. (Ex. A at pp. 9 & 11.) The October 2022 termination notice Plaintiff asserts in his Complaint shows his new channel was an attempt to circumvent the restrictions and removal of his channels from *Mishiyev I*, which is a "material breach" of the TOS giving YouTube "the right to terminate [Plaintiff's] Google account or [his] access to all or part of the Service." (*Compare* Ex. C *with* Ex. A at 10.) That termination notice further informed

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

Plaintiff that he had no right to create any new YouTube accounts or channels (Ex. C), yet his Complaint shows he knowingly continues to create new channels in breach of the TOS. Even ignoring all of Plaintiff's other repeated breaches, this material breach of the TOS authorizes YouTube to do exactly what Plaintiff accuses Defendants of doing. Hence, the TOS also bars liability for YouTube's decision to terminate Plaintiff's new channels.

**D.    The First Amendment Bars This Action.**

This action is also barred by the Constitution because the First Amendment protects YouTube's editorial decisions about what content is or is not disseminated on its private platform.

The Supreme Court has long held that the First Amendment protects the right of private parties to make editorial judgments about whether and how to present and arrange third-party speech. *E.g.*, *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974). Consistent with this bedrock Constitutional principle, the Supreme Court recently confirmed the First Amendment rights of YouTube in exercising control over what content it does or does not allow on its platform. *Moody v. NetChoice, LLC*, 144 S.Ct. 2383, 2395, 2400-02, 2404, 2406 (2024); *see also id.* at 2394 ("the First Amendment … does not go on leave when social media are involved"). The Court held that when YouTube uses its "Guidelines to decide which third-party content [its] feeds will display, or how the display will be ordered and organized, [YouTube is] making expressive choices. And because that is true, they receive First Amendment protection." *Id.* at 2406.

As a result, Plaintiff cannot force YouTube to publish his content on YouTube's platform. *See id.* at 2400 (citing, *inter alia*, *Miami Herald*). Yet, Plaintiff seeks to do just that, or otherwise hold YouTube liable for its editorial decisions about what content is published on its private platform — decisions accomplished through video takedowns and channel terminations. Thus, Plaintiff's claims are barred because the Complaint runs afoul of the First Amendment.

**E.    Plaintiff's State Law Claims Fail On Numerous Other Independent Grounds.**

**1.    The State Law Claims Are Preempted By The Copyright Act And Precluded By The TOS.**

Plaintiff's tortious interference, FDUTPA and IIED claims are based on the third-party DMCA takedown notices received by YouTube. (*See* Compl., Counts I, II & IV, ¶¶ 49-64, 84-

88.) Accordingly, Counts I, II, and IV are preempted under federal law by the DMCA and must be dismissed with prejudice. *E.g.*, *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2011 WL 2690437, *3, *5 (N.D. Cal. July 8, 2011) (dismissing tortious interference and other state law claims based on alleged improper DMCA takedown notices as preempted by Copyright Act); *accord Stevens v. Vodka & Milk, LLC*, 2018 WL 11222927, *1-3 (S.D.N.Y. Mar. 12, 2018) (citing cases and holding state law claim for intentional interference with contract preempted because "DMCA takedown notices, and the system of which they are a part, are creations entirely of federal law").

Despite his *pro se* status, Plaintiff undoubtedly knows his State Law Claims are meritless. This is because the Middle District of Florida dismissed with prejudice his identical tortious interference, FDUTPA, and IIED claims against the recording companies who allegedly submitted to YouTube the very DMCA takedown notices at issue here, **holding that these claims are preempted by the Copyright Act because they are based on the DMCA takedown notices**. *UMG Recordings*, M.D. Fla. No. 8:23-cv-1942-MSS-NHA (J. Scriven), Dkt. 38 at 3 & Dkt. 61 at 14-15 (both attached as <u>Exhibit B</u> to Req. for Judicial Notice).[6]

Further, because YouTube does not have any separate, fiduciary relationship with Plaintiff, YouTube's exercise of its express contractual rights under the TOS in shuttering Plaintiff's YouTube videos and channels cannot form the basis for Plaintiff's "new" tort claims. *See, e.g.*, *Ilkhchooyi v. Best*, 37 Cal.App.4th 395, 411-12 (1995) (express contract terms barred claims for tortious interference); *Trump v. Twitter, Inc.*, 602 F.Supp.3d 1213, 1227 (N.D. Cal. 2022) (no claim under FDUTPA or California's unfair competition statute because Twitter's TOS expressly authorized it to remove or refuse to publish content); *see also Mishiyev I*, 444 F.Supp.3d at 1160.

---

[6] The court did not dismiss Plaintiff's DMCA claim against the recording companies in his Second Amended Complaint in *UMG Recordings*. That decision, however, supports dismissal of Plaintiff's Section 512(f) claim here against YouTube and Mr. Pichai because – as Plaintiff consistently asserts in the two separate suits – the defendants in *UMG Recordings* submitted the DMCA notices at issue, not YouTube or Mr. Pichai. (*See* <u>Ex. B</u>, Dkt. 61 at 3-6, 10.) This is a critical distinction, which precludes a Section 512(f) claim against YouTube and Mr. Pichai, but allowed the *UMG Recordings* case to continue as the vehicle for contesting the DMCA takedown notices. *Supra* § IV.B.

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

**2.     Section 230 Of The CDA Bars The State Law Claims.**

Plaintiff's State Law Claims are also barred by Section 230 of the CDA because Plaintiff challenges YouTube's decisions to host or remove third party content from its online service. *See Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) ("any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230"). The CDA precludes any state law contract or tort claims that conflict with this immunity, 47 U.S.C. § 230(e), including claims based on YouTube removing videos and terminating channels due to allegedly false DMCA takedown notices. *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, *1, *2-3 (N.D. Cal. July 8, 2016) (Gilliam, Jr., J.) (dismissing claims with prejudice because "the CDA precludes as a matter of law any [state law] claims arising from [YouTube's] removal of Plaintiff's videos").

YouTube is undeniably an "interactive computer service" provider subject to Section 230 immunity. *E.g.*, 47 U.S.C. § 230(f)(2); *Kifle v. YouTube LLC*, 2021 WL 10331555, *3 (N.D. Cal. Oct. 5, 2021) (Breyer, J.); *Lancaster*, 2016 WL 3648608 at *2. Plaintiff's claims are all based on content from Plaintiff, including copyrighted content of third-parties Plaintiff used in his videos (Compl. ¶¶ 18, 21, 24, 34, 67). *See Lancaster*, 2016 WL 3648608 at *3 (CDA applied where removed content was created by plaintiff or third-parties, not YouTube); *Kifle*, 2021 WL 10331555 at *4 (same). Finally, YouTube's "decision to 'remov[e] content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating [YouTube] as a publisher.'" *Lancaster*, 2016 WL 3648608 at *3 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) (cleaned up) and citing *Roommates.com*, 521 F.3d at 1171); *accord Kifle*, 2021 WL 10331555 at *3; *Prager Univ. v. Google LLC*, 85 Cal.App.5th 1022, 1029-30, 1031-35 (Cal. Ct. App. 2022) (affirming dismissal of state law claims based on YouTube's restriction of plaintiff's videos as barred by CDA).

The Complaint even acknowledges that YouTube is entitled to Section 230 immunity: "In censoring (flagging, demonetizing, etc.) Plaintiff, Defendants relied upon and acted pursuant to Section 230 of the Communications Decency Act. … Defendants would not have de-platformed Plaintiff … but for the immunity purportedly offered by Section 230." (Compl. ¶¶ 36, 38; *see also*

¶¶ 39-40 (acknowledging the CDA immunizes social media companies for blocking, restricting, or refusing to carry third-party speech).) In that sense, the Complaint is correct – and all of Plaintiff's State Law Claims must be dismissed with prejudice pursuant to the CDA.

Recognizing the CDA bars his State Law Claims, Plaintiff attempts in vain to assert a pre-emptive Constitutional challenge to Section 230. (Compl. ¶¶ 41-45.) Plaintiff's desperate challenge fails for several reasons. First and foremost, Plaintiff lacks standing to challenge the constitutionality of the CDA. The speculative allegation that YouTube censored Plaintiff because it has CDA immunity cannot establish standing. *See Trump*, 602 F.Supp.3d at 1225 (rejecting similar challenge to CDA). Plaintiff also cannot plausibly allege his injuries are fairly traceable to Section 230. Plaintiff's alleged injuries "arose from the actions of YouTube, a private entity, as it enforced its own standards." *Lewis v. Google, LLC*, 851 F. App'x 723, 723-24 (9th Cir. 2021) (rejecting similar challenge to CDA). In addition, invalidating the CDA would not redress Plaintiff's alleged injuries, because this would not reinstate Plaintiff's removed content or terminated channels, and moreover, the First Amendment protects YouTube from being compelled to reinstate his videos or channels even without the CDA. *See Am. Freedom Def. Initiative v. Lynch*, 217 F.Supp.3d 100, 106 (D.D.C. 2016) (rejecting similar challenge to CDA).

Second, Plaintiff's First Amendment challenge to the CDA requires him to sue a state actor — which YouTube is not. *Prager Univ.*, 951 F.3d at 996 ("YouTube is a private entity … [and] the First Amendment prohibits the government—not a private party—from abridging speech."); *Divino Group LLC v. Google LLC*, 2022 WL 4625076, *18-19 (N.D. Cal. Sept. 30, 2022) (rejecting similar constitutional challenge to CDA because YouTube is not a state actor subject to the constraints of the First Amendment, and the CDA does not deprive plaintiffs of their rights). Third, "Section 230 does not prohibit any speech." *Lewis*, 851 F. App'x at 724 n.2. Hence, Plaintiff's First Amendment challenge to the CDA fails on the merits. *See, e.g.*, *Divino Group*, 2022 WL 4625076 at *19 (First Amendment challenge to CDA lacked merit); *Green v. AOL*, 318 F.3d 465, 472 (3d Cir. 2003) (same).

### 3. The State Law Claims Fail To State A Claim On Which Relief Can Be Granted.

#### a. The Claim For Intentional Interference With Business Relations Fails.

Count I for intentional interference with business relations requires Plaintiff to allege: 1) a valid contract or other business or economic relationship "between plaintiff and a third party"; 2) defendant's knowledge thereof; 3) defendant's intentional acts intended to induce a breach or disruption of that relationship; 4) actual breach or disruption; and 5) resulting damages. *Mishiyev I*, 444 F.Supp.3d at 1160-61 (cleaned up). Count I fails at the outset because the Complaint asserts YouTube interfered with **its own** business relationship or contract with Plaintiff. (Compl. ¶ 50.) A party to a contract or business relationship, however, cannot tortiously interfere with that contract or relationship. *E.g.*, *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1127 (9th Cir. 2014) (parties immune from claims for interfering with own contract under California law).

Further, the Complaint does not identify a specific contract or other business or economic relationship between Plaintiff and a specific third-party. *Mishiyev I*, 444 F.Supp.3d at 1160-61; *see also Damabeh v. 7-Eleven, Inc.*, 2013 WL 1915867, *10 (N.D. Cal. May 8, 2013) (must "allege facts showing that [d]efendant interfered with [a] relationship with a particular individual"); *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F.Supp.3d 1092, 1115 (C.D. Cal. 2015) (plaintiff "must identify the third party or parties with whom they contracted, and the nature and extent of [plaintiff's] relationship with that party or parties"). Likewise, the Complaint fails to allege facts that Defendants committed any wrongful act to interfere with the unidentified relationships. *See generally Marin Tug & Barge, Inc. v. Westport Petro., Inc.*, 271 F.3d 825, 830-31 (9th Cir. 2001) (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740, 750-51 (1995)). Of course, Plaintiff cannot cure this fatal defect because YouTube is legally authorized to remove Plaintiff's videos and terminate his channels. *See Mishiyev I*, 444 F.Supp.3d at 1159-60.

#### b. The FDUTPA Claim Fails.

Plaintiff's Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**") claim is barred by the choice-of-law provision of YouTube's TOS. (Ex. A at 15.) This provision is valid and enforceable: 1) California undoubtedly has a substantial relationship to this case because YouTube's principal place of business is in California and it is an online service company with

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

users worldwide; and 2) Plaintiff cannot show a good reason to invalidate the parties' choice of California law in favor of the FDUTPA. *See Trump*, 602 F.Supp.3d at 1226-27 (reaching same conclusion with similar choice-of-law in Twitter's TOS). Plaintiff's agreement that California law governs is fatal to Count II. *Id.*; *see also Herssein Law Grp. v. Reed Elsevier, Inc.*, 2014 WL 11370411, *9 (S.D. Fla. Mar. 5, 2014) ("a choice-of-law provision that provides for the application of non-Florida law precludes a claim under the FDUTPA").

Even if Plaintiff were not contractually barred from pursuing a FDUTPA claim, his claim would still fail on the merits. The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The Complaint does not, and cannot, identify any such conduct by Defendants. Besides an insignificant and otherwise baseless allegation about a lease agreement and failure to repair an unidentified property, the Complaint merely asserts that removing Plaintiff's videos and terminating his channels pursuant to YouTube's TOS violates the FDUPTA. (Compl. ¶ 58 & Count II.) However, the TOS is clear that YouTube is not required to host any content, and has the right to remove content and terminate user channels, including for multiple ***allegations*** of copyright infringement, ***and*** for attempting to circumvent YouTube's restrictions or terminations of Plaintiff's prior channels. (TOS, <u>Ex. A</u>, at 4, 8, 9, 10-11.) Accordingly, the exercise of YouTube's express contractual rights does not violate the FDUTPA, regardless of whether YouTube inconsistently applies its TOS or not. *See Trump*, 602 F.Supp.3d at 1227 (dismissing similar FDUTPA claim against Twitter on same ground).

    c.   <u>The Intentional Infliction Of Emotional Distress Claim Fails.</u>

Count IV for IIED requires Plaintiff to plead facts showing: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) that the plaintiff suffered severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Habeeb v. State Farm Fire and Cas. Co.*, 51 F.3d 280, 1995 WL 139229, *3 (9th Cir. 1995) (citing *Trerice v. Blue Cross of Cal.*, 209 Cal.App.3d 878, 883 (1989)). Plaintiff's IIED claim here fails because the Complaint does not present "outrageous conduct … so extreme that it

exceeds all bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *Habeeb*, 1995 WL 139229 at *3 (9th Cir. 1995) (affirming dismissal of IIED claim based on insurer's alleged failure to thoroughly investigate plaintiff's claim and alleged restrictive contract interpretation to avoid the claim).

Enforcing YouTube's TOS prohibiting users from posting allegedly infringing content is not outrageous and extreme conduct necessary for IIED. *See, e.g.*, *King v. Facebook, Inc.*, 572 F.Supp.3d 776, 785-86 (N.D. Cal. 2021) (dismissing with prejudice IIED claim because disabling plaintiff's account for allegedly violating Facebook's *Community Standards* was not "extreme and outrageous conduct" required by California law). *Accord Montano v. Wash. State Dep't of Health*, 2024 WL 3029155, *11-12 (S.D. Fla. May 28, 2024) (dismissing Florida IIED claim against YouTube and Google because there is nothing outrageous or extreme in YouTube allowing videos to be uploaded and viewed on its website), *adopted* 2024 WL 3026528 (S.D. Fla. June 17, 2024); *DeLima v. Google, Inc.*, 561 F.Supp.3d 123, 136 (D.N.H. 2021) (New Hampshire IIED claim against Google failed because alleged removal of content and termination of plaintiff's YouTube account was not "outrageous conduct"). Further, Plaintiff's speculation that Defendants colluded with the third-parties who submitted the DMCA notices cannot transform YouTube's response to those notices into "extreme and outrageous" conduct, nor support a finding that Defendants intended to cause, nor had a reckless disregard of causing, Plaintiff extreme emotional distress. *Lancaster*, 2016 WL 3648608 at *4-5 (dismissing IIED claim against YouTube and Google by YouTube user premised on alleged false DMCA takedown notices and resulting strikes and blocks on her YouTube channel).

In addition, the Complaint's allegation of "various emotional distress" from reputational harm and loss of an audience and new source of income, Compl. ¶¶ 86-87, does not meet the "high bar" of "severe emotional distress." *See Hughes v. Pair*, 46 Cal.4th 1035, 1051 (2009) (IIED requires "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it") (cleaned up); *see also Baker v. Google LLC*, 2024 WL 3551878, *5 (D.D.C. July 26, 2024) (dismissing IIED claim under California law because, *inter alia*, allegations of being very disturbed, upset and frustrated

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

Bryan Cave Leighton Paisner LLP
3 Embarcadero Center 7th Floor
San Francisco, California 94111

from alleged false accusation of possessing child sexual abuse material did not establish "severe emotional distress"). Thus, Plaintiff's IIED claim fails here as well.

**F.    Plaintiff's Claims Against Mr. Pichai Must Also Be Dismissed For The Additional Reason That No Actionable Conduct By Mr. Pichai Is Alleged.**

Finally, Plaintiff fails to state a claim against Mr. Pichai for the independent reason that the Complaint does not allege any personal actions by him that could give rise to personal liability. *See Chukwurah v. Google, LLC*, 2020 WL 510158, *3 (D. Md. Jan. 31, 2020) (dismissing claims against Mr. Pichai because complaint did not allege acts or omissions by him, or any role in the challenged conduct); *accord Children's Health Defense v. Facebook Inc.*, 546 F.Supp.3d 909, 925-27 (N.D. Cal. June 29, 2021) (dismissing claim against Facebook CEO because complaint did not plausibly allege personal involvement or direction of the challenged acts). At minimum, the Complaint must allege facts showing Mr. Pichai "actually participated in, directed, or approved" the alleged unlawful conduct. *Children's Health Defense*, 546 F.Supp.3d at 926. The Complaint here alleges no such facts, and Plaintiff does not even attempt to do so.

Instead, all the Complaint alleges is that Mr. Pichai is the CEO of YouTube's parent and holding companies. (Compl. ¶3.) This fact does not support the bald and conclusory leap that Mr. Pichai is therefore "responsible for the acts alleged … of YouTube." (*Id.*) Accordingly, the claims against Mr. Pichai should be dismissed with prejudice. *See Chukwurah*, 2020 WL 510158 at *3 (dismissing claims against Mr. Pichai as co-defendant with Google); *Children's Health Defense*, 546 F.Supp.3d at 925-27 (dismissing claims against Facebook CEO with prejudice).

**V.    CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice.


Dated: February 19, 2025                    **BRYAN CAVE LEIGHTON PAISNER LLP**

                                            By: */s/ Damon J. Whitaker*
                                                Damon J. Whitaker

                                            Attorneys for Defendants
                                            YOUTUBE, LLC and SUNDAR PICHAI